**ORAL ARGUMENT NOT YET SCHEDULED**

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23-3057

UNITED STATES OF AMERICA,

Appellee.

v.

MICHAEL ANGELO RILEY,

Appellant.

Appeal from the United States District Court
for the District of Columbia, No. 1:21-cr-00628-ABJ

**REPLY BRIEF OF APPELLANT**

\* CHRISTOPHER MACCHIAROLI
EMMA MULFORD
Silverman Thompson Slutkin White, LLC
1750 K Street, NW, Suite 810
Washington, D.C. 20006
(202) 539-2444
cmacchiaroli@silvermanthompson.com

\* Counsel for Oral Argument

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................iii

GLOSSARY OF ABBREVIATIONS .........................................v

SUMMARY OF ARGUMENT...................................................1

ARGUMENT..............................................................................5

I.  Both Counts of Obstruction of an Official Proceeding Should Have Been Dismissed Pretrial or After the Close of the Government's Evidence at Trial......................................................................5

    A.  Charged Conduct............................................................5

    B.  Government's Investigation............................................7

    C.  The Government's Resulting Prosecution Was Based on a Theory that Riley Obstructed an FBI Investigation............9

    D.  There Was Insufficient Evidence that Riley Intended or Knew that by Deleting his Own Facebook Messages he Would Be Affecting a Grand Jury Proceeding...................18

II.  Denying Riley Discovery that was Material to His Defense Was an Abuse of Discretion.................................................22

III.  The Government's Conflicting Theories as to What Grand Jury Proceeding Was Allegedly Obstructed Improperly Amended the Indictment.........................................................................24

IV.  The District Court Abandoned Its Judicial Independence..........25

CONCLUSION........................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Arthur Andersen L.L.P. v. United States*,
 544 U.S. 696 (2005)……………………………………………4, 12, 18, 19

*Richardson v. United States*, 526 U.S. 813 (1999)……….........................16

*United States v. Barrett*, 111 F.3d 947 (D.C. Cir. 1997) ……...........25, 26

*United States v. Carson*, 455 F.3d 336 (D.C. Cir. 2006) ……...............25

*United States v. Donato*, 99 F.3d 426 (D.C. Cir. 1996)……………….....26

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) ………….11, 12

*United States v. Guertin*, 581 F. Supp. 3d 90 (D.D.C. 2022)….1, 11, 12, 13

*United States v. Guertin*, 67 F.4th 445 (D.C. Cir. 2023)………………….12

*United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994)…………………….12

*United States v. Montgomery*, 578 F. Supp. 3d 54 (D.D.C. 2021)……….13

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006)…………………18

*United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023)……….........20

*United States v. Vampire Nation*, 451 F.3d 189 (3d Cir. 2006)…………..18

*United States v. Wellman*, 26 F.4th 339 (6th Cir. 2022)…………………11

**Statutes**

18 U.S.C. § 1505………………………………………………………….10, 12

*18 U.S.C. § 1512..........................................................1, 4, 11, 12, 13, 14, 16

28 U.S.C. § 455……………………………………………………………26

**Other Authorities**

Fed. R. Crim. P. 16....................................................................22

**\*** Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY OF ABBREVIATIONS

**A**         Appendix

**App. Br.**  Appellant's Brief

**FBI**      Federal Bureau of Investigation

**Gov't Br.**  Appellee's Brief

**SA**       Special Agent

## SUMMARY OF ARGUMENT

Although conceding that a violation of 18 U.S.C. § 1512 cannot be premised on obstruction of an FBI investigation, the Government goes to great lengths to establish that appellant was prosecuted for obstruction of a grand jury proceeding. He was not. The Government's search warrants, surreptitiously recorded interview of appellant, assertions at the pretrial conference, and trial presentation were all consistent with the theory that appellant obstructed an FBI investigation. Notwithstanding the district court's attempts to steer the Government back to a particular grand jury proceeding to come within the confines of § 1512, when the dust settled post-trial, the Government again confirmed that its prosecution was based on an alleged "'attempt[] to obstruct or impede the FBI's investigation of the events surrounding the January 6" breach of the U.S. Capitol. A1077.

The Government proceeded with a theory of obstruction of an FBI investigation because, until very recently, the Government was asserting that obstruction of an investigation *was* a basis for liability under 18 U.S.C. § 1512, and returned indictments alleging as such. *See United States v. Guertin*, 581 F. Supp. 3d 90 (D.D.C. 2022).

As for the actual charges in this case, no grand jury proceeding was obstructed. As for Count I of the Indictment, which the Government dismissed after the jury failed to reach a verdict, no grand jury was in existence at the time of the alleged obstruction. Jacob Hiles, who claimed to have been pushed into the Capitol, was charged with misdemeanor trespassing offenses, for which a grand jury would not have been used or foreseeable, consistent with the trial testimony of every Capitol Police officer who testified that they were not aware of or participated in any grand jury proceedings relating to misdemeanor trespassing offenses at the Capitol.

As for Count II of the Indictment, there was no basis to find that appellant believed he was obstructing a grand jury proceeding relating to the breach of the Capitol on January 6, 2021 as to Hiles, and especially as to *himself* (which the Government adopted as its new theory midtrial), when deleting his own personal Facebook messages with Hiles. None of the messages were criminal in nature, and their deletion came after Hiles told appellant that he had been charged with misdemeanor offenses and the FBI had taken his phone and "downloaded everything." And, absent telling Hiles to take down a portion of a public Facebook post, viewed by

hundreds and in the possession of the FBI before appellant even contacted Hiles, appellant took no action to assist Hiles in resolving his misdemeanor charges. When civilian and law enforcement colleagues later told appellant that they were reporting Hiles, appellant did not deter them or otherwise warn Hiles. Further undermining any allegation that he had the requisite intent or knowledge that deleting his Facebook messages would affect a future grand jury relating to him, appellant maintained a copy of his last message to Hiles on his Facebook account (which referenced the deletion of prior communications) and shared it with his union representative.

Moreover, while the Government attempts in its brief to create the impression that an all-encompassing grand jury was established on *January 8*, 2021 to broadly investigate all aspects relating to January 6, 2021, the Government failed to produce *any* evidence at trial to prove such a claim. In fact, the Government's only witness on the issue testified erroneously that he had personal knowledge of the charged grand jury proceeding, only to concede on cross-examination that his knowledge was based on a separate and completely different grand jury, the one that actually indicted appellant nine months later.

When the district court *sua sponte* instructed the Government to find another witness or to get the court "something" before resting its case, so that the court could take judicial notice to salvage the Government's case from dismissal, the information referenced (even though never completely produced to the defense) did not support the broad Warren Commission-type grand jury proceeding that the Government now alludes to on appeal. The district court, nonetheless, took judicial notice of a grand jury investigating the breach of the Capitol on January 6, 2021 as the official proceeding charged in the Indictment.

In the end, the only conviction the Government obtained at trial was based on the claim that appellant obstructed a grand jury proceeding on January 20, 2021, not focused on Hiles or the breach of the Capitol, but purportedly on appellant, although not charged in the Indictment or contained in the district court's judicial notice. If the Government itself was not sure which grand jury proceeding it was claiming appellant obstructed at the conclusion of its own case, neither was appellant, the district court, or the jury, and clearly there was no unanimity on the sole count of conviction, notwithstanding, the Supreme Court's requirement that a violation of 18 U.S.C. § 1512 contain a "nexus" with a "particular"

official proceeding. *See Arthur Andersen L.L.P. v. United States*, 544 U.S. 696, 708 (2005).

Separate and apart from the fatal flaw in the Government's theory of its case (which does not provide criminal liability under the charged statute), the Government's refusal to provide discovery that was material to appellant's defense, compounded by the district court's: (i) counseling the Government on what legal theories to pursue; (ii) excluding appellant's defenses, grounds for cross-examination, and trial witnesses, such as Hiles and FBI agents involved in the investigation; and (iii) salvaging the Government's case from dismissal by *sua sponte* taking judicial notice of disputed facts, all warrant the reversal of appellant's felony conviction for deleting his own Facebook messages.

## ARGUMENT

I. **Both Counts of Obstruction of an Official Proceeding Should Have Been Dismissed Pretrial or After the Close of the Government's Evidence at Trial.**

A. **Charged Conduct.**

Michael Riley was investigated and charged because he was a Capitol Police officer and, for a period of less than two weeks, he communicated via Facebook with Jacob Hiles, a Virginia fisherman

whom Riley had never met or previously spoken to, but who was at the U.S. Capitol on January 6, 2021. A1088, 1112, 1152-54, 1168.

After leaving the Capitol on January 6, 2021, Hiles made a lengthy public Facebook post — which was viewed by hundreds, reposted by dozens, and was in the actual possession of the FBI within hours — describing how he was "pushed" into the Capitol to avoid being "trampled," left immediately at the direction of law enforcement, and deeply regretted the events of that day. A617, 694-95, 1160-62. Believing that Hiles was not someone who intentionally entered the Capitol or posed a danger, Riley messaged him and suggested that he take down the *portion* of his post about being inside the Capitol. *See* A17, 935, 985, 1163. According to Hiles (whom the Government opposed Riley calling as a defense witness at trial), he already knew his "goose was cooked" and perceived that Riley was telling him to not make it worse for himself by posting on Facebook. A1144-45. Riley's initial, short message to Hiles on January 7, 2021, is the sole conduct underlying Count I of the Indictment (on which the jury failed to reach a verdict). A20.

In the days that followed, Riley and Hiles continued to exchange messages, mostly about fishing, their life stories, and politics. There was

no discussion of any grand jury proceeding, especially given that Hiles told Riley that he had been charged with misdemeanors for his limited time inside the Capitol. A334, 941-42. And, at no time did Riley give Hiles any advice to avoid being investigated or charged. On January 20, 2021, Hiles told Riley that the FBI "took [his] phone and downloaded everything." A511. Upset and embarrassed that Hiles had told the FBI that they were "buddies," when they communicated less than two weeks and had never met, Riley notified Hiles that they were having no further contact and he was deleting his prior posts from his Facebook account, which he did, but preserved his message to Hiles terminating all future contact. A944. Riley's deletion of his own messages with Hiles is the sole conduct underlying Count II of the Indictment. A21.

## B. Government's Investigation.

Upon learning from Hiles in January 2021 that he was speaking with Riley (whom Hiles identified as a Capitol Police officer), the FBI took no action. Riley continued his exemplary performance with the Capitol Police until months later, when an Assistant U.S. Attorney in the Office's Public Integrity Section took note of Hiles' communications and ordered the FBI to open an investigation into Riley. A1144-54.

Even then, there was no investigation of obstruction of a grand jury proceeding, rather, the entire investigation focused on alleged obstruction of the FBI's investigation, potential communication with Hiles, and whether Riley had made social media posts after the November 2020 election, even though Hiles told the Government multiple times that he never spoke to Riley before January 6, mostly discussed fishing, and had never met Riley. A1144-45, 1152-57. With no crime in communicating on Facebook and no allegations of any conspiracy with anyone, the Government then went to Riley's home with two separate recording devices to hopefully get Riley to make a false statement to law enforcement subjecting him to a felony charge.

Contrary to the Government's expectations, Riley not only acknowledged speaking to Hiles months earlier, but also admitted that he told Hiles that he did not think it was a "good idea" that Hiles had posted on Facebook about being inside the Capitol. A1085-90. Riley also confirmed that, since terminating contact with Hiles on January 21, 2021, he never communicated with him again. *See* A951. Moreover, when the agents surprisingly asked about his political beliefs, Riley told the agents, "I'm a Republican. That's the extent of it," and that his beliefs did

not affect how he did his job. A1090-91. *Cf.* A1080 (claiming at sentencing that Riley "flaunt[ed] the rule of law in pursuit of his political beliefs").

Without any evidence of a conspiracy or false statement by Riley, the agents asked Riley why he did not inform the FBI about Hiles — an inquiry focused on alleged obstruction of an FBI "investigation." A1157. At that time, Riley was aware that multiple individuals had already reported Hiles, including another Capitol Police officer. Once the agents told Riley that he and not Hiles was being investigated, and for conspiracy and obstruction, he asked the agents how he had obstructed anyone. The agents told him that they were there because he was a police officer, and cited a felony statute that had nothing to do with obstruction of a grand jury proceeding. A1104-12.

### C. The Government's Resulting Prosecution Was Based on a Theory that Riley Obstructed an FBI Investigation.

Notwithstanding its concession that an investigation is not an official proceeding under the charged obstruction statute, the Government's entire investigation and prosecution of Riley was based on the obstruction of an FBI investigation. *See, e.g.*, A1152-57 (requesting the opening of an FBI investigation as to a conspiracy and on obstruction

of an agency investigation under 18 U.S.C. § 1505 and seeking evidence of "[o]bstruction of the investigation into the offenses committed at the U.S. Capitol" dating back to the November 3, 2020 election); A1090-97, 1112 (interviewing Riley because he was a police officer and in regard to his political beliefs as it pertained to the FBI's investigation); A183-84 (alleging at the pretrial conference to the shock of the district court that the Government would argue to the jury that Riley obstructed the "federal investigation, including a grand jury investigation, resulting from the January 6th breach of the U.S. Capitol"); A294-300 (asserting in its opening statement that Riley obstructed an FBI investigation, prompting a curative instruction to the jury); A593 (eliciting testimony that the sole act underlying Count One, Hiles' initial Facebook post, was relevant to an FBI investigation); A1077 (admitting in advance of sentencing that Riley was prosecuted for "attempt[ing] to obstruct or impede the FBI's investigation of the events surrounding the January 6" breach of the U.S. Capitol); A1030 (claiming in its post-trial brief that appellant had the "intent to affect a federal criminal investigation that he knew would include the grand jury").

The law is clear that a law enforcement investigation is not an

official proceeding under 18 U.S.C. § 1512. *See* App. Br. at 32-33; *see also*

Gov't Br. at 24 (conceding the same). As has been cautioned, "in close

cases," courts "must be careful to avoid conflating obstruction of an

official proceeding with obstruction of a mere criminal investigation

unconnected with an official proceeding." *United States v. Wellman*, 26

F.4th 339, 348 (6th Cir. 2022). That is what the Government asks the

Court to do here — to conflate alleged obstruction of a criminal

investigation launched by the FBI, with obstruction of a corollary grand

jury. *Cf. United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013)

(dismissing indictment and refusing to read an FBI investigation into the

definition of an official proceeding); *Guertin*, 581 F. Supp. 3d at 100

(dismissing indictment alleging obstruction of an agency investigation

and citing *Ermoian*, 752 F.3d at 1171, as "holding a criminal

investigation is not an 'official proceeding,' even though it *might* lead to

an 'official proceeding' like a federal grand jury or criminal trial"

(emphasis in original))[1]; *Arthur Andersen*, 544 U.S. at 708 (requiring that

---

[1] In *Guertin*, the district court rejected the Government's argument that an investigation was an official proceeding and dismissed the Government's indictment charging obstruction of an official proceeding pursuant to 18 U.S.C. § 1512, as well as, a separate wire fraud charge. 581 F. Supp. 3d at 100. In the Government's (unsuccessful) appeal of the

the defendant have "knowledge that his actions are likely to affect [a] judicial proceeding" to have the "requisite intent to obstruct").

In its brief (at 39-40), the Government mistakenly relies on this Court's decision in *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994), in an attempt to blur the lines between an investigation and a grand jury proceeding. This position is no more persuasive than the Government's historical position, routinely rejected by courts, that an investigation *is* an official proceeding. *See Guertin*, 581 F. Supp. 3d at 99, n.7 (rejecting Government's reliance on *Kelley* to salvage its indictment from dismissal where "*Kelley* interpreted the statutory phrase 'pending proceeding' in § 1505 and merely assumed without deciding that § 1505 and § 1512(c)(2) would have comparable meanings," which they do not, as "§ 1505 contains none of the abovementioned indicia limiting its applicability to formal tribunals"); *Ermoian*, 752 F.3d at 1171 n.5 (finding *Kelley* unpersuasive and distinguishable as this Court interpreted a different statute and relied upon a concession of the parties on the issue); *United States v.*

---

dismissal of its wire fraud charge before this Court, the Government abandoned any defense of its claim that an investigation *is* an official proceeding. *See United States v. Guertin*, 67 F.4th 445 (D.C. Cir. 2023) (affirming district court).

*Montgomery*, 578 F. Supp. 3d 54, 67 (D.D.C. 2021) (same).[2]

The Government tried to improperly fit Riley's conduct into 18 U.S.C. § 1512 by alleging that Riley obstructed "a criminal investigation, for which a federal grand jury was convened" (A16), thereby taking the position that one could violate the charged obstruction statute if the FBI investigation led to a grand jury. This is not the case under existing precedent, *see Guertin*, 581 F. Supp. 3d at 100; *Ermoian*, 752 F.3d at 1171, and the district court erred in denying Riley's motion to dismiss the Indictment.

The error in the district court's ruling was highlighted on the eve of trial, when the court had to remind the Government that it could not proceed on a theory of obstruction of an investigation, but had to proceed on a theory of obstruction of a grand jury proceeding. A183-84. The Government still did not heed the district court's guidance, as its opening statement and evidence at trial focused on obstruction of an FBI investigation, including testimony that an FBI investigation goes hand

---

[2] In its brief (at 26-27, n.4), the Government refuses to confirm whether the grand jury who indicted Riley was ever properly instructed that obstruction of an FBI investigation cannot form the basis of a violation of 18 U.S.C. § 1512.

in hand with a grand jury, so that, basically, if you find one, you find both. *See* A699-700 ("They tend to mirror one another and are incorporated together."). Given the Government's persistent claim of obstruction of an FBI investigation in opening (A294-300), the district court agreed to give a curative instruction that obstruction of an FBI investigation was not charged.[3] A1024.

Regarding the sole offense of conviction, Count II, the Indictment alleged and the jury was instructed that, on January 20, 2021, Riley "deleted his Facebook direct communications with Jacob Hiles to impair their use in the federal grand jury proceeding resulting from the January 6 breach of the U.S. Capitol." A21, 1026. The Government was required to establish that Riley "acted with the intent to impair the record's integrity or availability in an official proceeding," "acted with awareness that the natural and probable effect of his conduct would be to obstruct or impede that proceeding," and "acted corruptly." A1026. The district court further instructed the jury that the obstructive conduct must "be connected to a specific official proceeding," and that the proceeding was

---

[3] The district court declined to give Riley's requested instruction that an FBI investigation could not form the basis of a violation of § 1512. A719, 1024.

"a federal grand jury proceeding resulting from the January 6 breach of the U.S. Capitol." *Id.*

Consistent with the Indictment, the parties' pretrial conference, and the finalized jury instructions, Riley proceeded to trial with the understanding that the Government was alleging that his actions in deleting his Facebook messages frustrated some grand jury proceeding relating to Hiles. That claim was dead on arrival. Before the Facebook messages were deleted, Hiles had told Riley that he had been arrested on misdemeanor trespassing offenses for his limited time inside the Capitol, and that the Government took his phone and "downloaded everything."

The district court directed the Government to a more persuasive argument:

**Court:**    I know that when you started talking at the second pretrial conference that he took all this down in connection with a potential investigation of Jacob Hiles, that that took me by surprise because I always thought that Count 2 is to impair their availability for a potential investigation of him.

A767. The court then gave the Government an opportunity to reframe its theory:

**Court:**    Is that the official proceeding that you're saying he is trying to obstruct in count 2? Or are you saying he was trying to stave off an investigation of himself for potentially doing what's alleged in Count 1? What are you going to tell the jury

you've proved? . . . I'm just asking you what are you saying Count 2 is about? . . .

**AUSA:** Can I have one moment with counsel, just to make sure that we are answering your question.

**Court:** This should be a question to which you know the answer. But go ahead.

A768-70.

Although the Government elected to proceed under both theories (*id.*),[4] it was required to establish that Riley intended to obstruct the charged grand jury proceeding, did so corruptly, and knew that he would affect that specific grand jury proceeding by deleting his own Facebook messages. A1026. Even without any direct evidence presented by the

---

[4] By permitting the Government to change theories and official proceedings midtrial from one investigating Hiles, *i.e.*, the January 6 breach of the Capitol, to one investigating Riley himself, there could be no unanimity amongst the jurors on the element of the charged official proceeding. *See Richardson v. United States*, 526 U.S. 813 (1999). Likewise, by altering the grand jury in Count II from being focused not on Hiles, but on Riley himself, there was insufficient evidence that Riley intended to affect a grand jury in the District of Columbia when neither Riley nor Hiles resided in the District of Columbia during the term of their communications. *See* 18 U.S.C. § 1512(h) (permitting jurisdiction where the offense took place or where the "official proceeding (whether or not pending or about to be instituted) was intended to be affected"); *accord* A749-50.

Government during its case,[5] the district court took judicial notice that "[a] federal grand jury was empaneled in the District of Columbia on January 8th, 2021, and it considered matters related to the events of the United States Capitol on January 6, 2021." A714-16, 727, 775. Even with the judicial notice, there was nothing in the record that the grand jury proceeding considered conduct outside the breach of the Capitol on January 6, 2021.

---

[5] In its brief (at 47 n.11), the Government misstates the record. The district court had to take judicial notice because it was clear to everyone in the courtroom that while the Government proffered SA Stephen Hart as having personal knowledge of the charged grand jury, he had no such knowledge. *See*, *e.g.*, A375-76 (sponsoring SA Hart as having testified in the charged grand jury "multiple times" when he never did); A704 (Court: "[W]e spent a lot of time . . . when he was on direct exploring whether he had personal knowledge of what the grand jury was empaneled to do and whether he was involved in that process, and it turns out he wasn't."). SA Hart also falsely testified that the charged grand jury had investigated and charged Riley. As detailed in Riley's new trial motion, that was a completely different grand jury, empaneled in August 2021. A12, 1074. SA Hart's testimony had other errors, including that Riley reposted an image of Donald Trump on Facebook and that Riley himself personally discovered the explosive device on January 6 (giving the impression that he was Richard Jewell). Both items were false and had to be corrected on the record. A601-02, 607-09, 1164.

### D. There Was Insufficient Evidence that Riley Intended or Knew that by Deleting his Own Facebook Messages he Would Be Affecting a Grand Jury Proceeding.

Consistent with *Arthur Andersen*, the Government must prove beyond a reasonable doubt that a defendant had in "contemplation" a "particular official proceeding" when he attempted to interfere with evidence. 544 U.S. at 708. "The touchstone for the nexus requirement" "is an act taken that would have the natural and probable effect of interfering with a judicial or grand jury proceeding that constitutes the administration of justice; that is, the act must have a relationship in time, causation, or logic with the judicial proceedings." *United States v. Vampire Nation*, 451 F.3d 189, 205-06 (3d Cir. 2006) (quoting *United States v. Quattrone*, 441 F.3d 153, 171 (2d Cir. 2006)).

The Government did not meet its burden of proof as to Count II. As the Government rested, it was not even sure if Count II involved obstruction of a grand jury pertaining to Hiles or one investigating Riley. A183-84. Neither was foreseeable, as Hiles was charged with misdemeanor trespassing, not subject to the felony indictment process, and Riley had no belief, intent, or knowledge that a grand jury would be investigating him for non-criminal Facebook messages, when Hiles had

been arrested on solely misdemeanor offenses, admitted his conduct to the FBI and the FBI took his phone and "downloaded everything."[6] A988, 1017.

In denying Riley's motion for acquittal, the district court did a complete about-face and removed the nexus requirement from *Arthur Andersen*, improperly refocusing the inquiry on whether there was any "foreseeable grand jury." Contrary to its own jury instruction, the district court stated that "the law cannot be that to establish the nexus requirement one must contemplate the existence of a particular grand jury [e]mpanelment." A1065-74. The district court was unable to point to

---

[6] In its brief (at 47), the Government goes to great lengths to claim that Riley's last message with Hiles establishes his guilt because, contrary to the statements contained therein, Riley would have known earlier than the time of the message that Hiles' description of his conduct in his initial post was inaccurate or incomplete and, therefore, Riley gave a "false reason to break off contact." Even assuming the Government is proceeding on its new theory that Count II pertained to a grand jury focused on Riley's conduct and not Hiles' conduct, it was undisputed that Hiles' initial Facebook post was misleading but Riley relied on it to his detriment (A985), and that when Riley learned Hiles had described him as a buddy to the FBI, he knew he had to stop all contact going forward and have that termination memorialized in writing and available if his employer, the U.S. Capitol Police, inquired as to whether he was actively communicating with Hiles. A944. The fact that Riley did not acknowledge that he should have exhibited better judgment in speaking to Hiles in the first place does not translate into obstruction of some future grand jury proceeding eight months later.

any fact showing that Riley should have known that felony arrests for violence at the Capitol on January 6 translated into a grand jury focused on his Facebook messages with Hiles, a protestor who was charged with trespassing, where the messages were not criminal in nature.[7]

As it pertains to the element of corrupt intent, in *United States v. Robertson* — issued on October 23, 2023, after Riley's opening brief was filed — the majority opinion held that a defendant acts "corruptly" when he engages in "independently felonious means" to obstruct an official proceeding. 86 F.4th 355, 381 (D.C. Cir. 2023). Here, there is no independent felonious conduct in deleting personal Facebook messages not known to be relevant to any grand jury proceeding, especially when

---

[7] The Government omits from its summary of the defense case the testimony of numerous Capitol Police officer witnesses that, in their respective years of service, trespassing offenses on Capitol grounds were always misdemeanors offenses that were never the subject of grand jury proceedings. See, e.g., A800-01, 836, 926; accord A1005. This is consistent with the over two-hundred defendants, such as Hiles, who were charged by information and not subject to the grand jury indictment process for misdemeanor trespassing inside the Capitol on January 6, 2021. A1132-33; *compare* A405-06 (Court: "A pure, straight-up indictment for just a misdemeanor, I don't see that frequently. I can't say off the top of my head if I've ever seen it because, obviously, it's not necessary") *with* A562-63 (impeaching SA Hart's claim that indictments are the "preferred" way to charge misdemeanor offenses).

those messages pertained to an individual already charged with misdemeanor offenses and were believed to be already in the possession of the FBI. Accordingly, there was insufficient evidence of intent, let alone corrupt intent, to establish obstruction of a grand jury proceeding.[8]

---

[8] The Government claims (at 35-44) that Riley's references to potential felonies in certain messages establish an intent to obstruct a grand jury proceeding. They do not. In the initial message to Hiles on January 7, Riley stated that "everyone is going to [be] charged" but did not reference felonies. A1163. Since his intent is examined at the moment that he sent the message on January 7, there is no basis to prove that he foresaw a grand jury for Hiles, who described himself being pushed into the Capitol and promptly leaving at law enforcement's direction. A1663-64. As for the deletion of his Facebook messages, Riley knew at that point that Hiles had been charged with only misdemeanors offenses and reasonably believed he would not be indicted on felonies given his trespassing conduct. Moreover, Riley's message to Hiles that those who "engaged in violent acts or destruction of property" were "all being charged federally with felonies" was accurate, but not relevant to Hiles, who had not committed any violent acts. A1139. And, although Riley told his friend Ben Sheppherd that he incorrectly "thought" everyone was being charged with felonies, Hiles had already been charged with misdemeanor offenses, thereby negating any claim that Riley obstructed a grand jury related to January 6. Moreover, Hiles' messages where he indicated that he learned from the Capitol Police on *January 16*, 2021 that those who "were not violent or destructive are mostly charged with trespassing," Gov't Exs. 103-104, which the Government attempted to move into evidence at the pretrial conference but later withdrew, showed Riley's understanding of the difference between misdemeanor and felony conduct. A226-31.

## II. Denying Riley Discovery that Was Material to His Defense Was an Abuse of Discretion.

Federal Rule of Criminal Procedure 16(a)(1)(E) provides that, upon a defendant's request, the Government must make available documents "material to preparing the defense" or that "the government intends to use [] in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E). In this case, the Government refused to provide any discovery as to the "grand jury proceeding charged in the Indictment" or "documents produced by the Government in discovery" in the prosecution of Hiles, and the district court denied Riley's motion to compel those materials. This error plainly prejudiced Riley's substantial rights.

First, during trial, the district court relied on documents in the above categories (some of which still have not been produced by the Government in discovery, even after Riley requested them again post-sentencing) to take judicial notice on the issue of the charged official proceeding. *See* A1149. The requested discovery thus goes directly to an essential element of the charges, and the absence of the materials hindered Riley's ability to effectively challenge the existence and scope of the charged official proceeding.

Moreover, a screenshot that was not produced until midtrial[9] (A1160) established that Hiles' Facebook post had been disseminated and viewed by hundreds of individuals and was in the possession of the FBI before Riley reached out to Hiles. This evidence is consistent with Riley's claim that he could not have affected the grand jury by suggesting that Hiles "take down" part of the post, and directly contradicted SA Hart's testimony that he would have wanted to see the post as part of his investigation, because he, in fact, did. A616-33, 870-78.

Finally, in response to the Government's lack of understanding (at 51) as to communications between agents concerning the prosecution of Riley, those are commonly referred to as *Jencks* material, which is required to be produced by statute and the Court's Scheduling Order and still has not been produced. *See* A1149.

---

[9] Riley sought disclosure of the screenshot, which was previously produced in discovery in the *Hiles* case (A569-71), in his motion to compel. *See* A5, 35. Notwithstanding the clear relevance of the document, the district court denied the motion, and the Government withheld the document until the district court changed course and ordered its production midtrial. The Government's assertion that Riley's claim is unpreserved is entirely disingenuous, as it is unclear how the Government would lack awareness that the withheld discovery was produced in the *Hiles* matter and thus requested in Riley's motion to compel. *Compare* Br. at 51-52 & n. 12 *with* A569-71, 616-33, 870-78.

These discovery violations affected Riley's ability to prepare for trial and should have been produced in advance of trial and not midtrial after SA Hart concluded his testimony.

## III. The Government's Conflicting Theories as to What Grand Jury Proceeding Was Allegedly Obstructed Improperly Amended the Indictment.

Contrary to the Government's claim in its brief (at 53-54), Riley's constructive amendment argument was preserved. Riley argued in his motion for new trial that the "Government improperly argued that [he] obstructed a grand jury proceeding *different* from the proceeding charged in the indictment." A12 (Docket Entry No. 87) (emphasis in original).

Regarding Count II, the Government completely diverged from the theory charged in the Indictment that Riley's actions on January 20, 2021 were taken to remove evidence from a grand jury investigating the "January 6 breach of the U.S. Capitol." Instead, the Government argued obstruction of a grand jury investigating Riley *himself*, for conduct that did not occur on January 6, 2021 and did not involve the breach of the U.S. Capitol.

Applying mental gymnastics, the Government still attempted to establish that the charged grand jury encompassed Riley's conduct.

However, there was no evidence in the record that the charged grand jury had such a broad scope at the time it was empaneled, on January 8, 2021, and the Government's sole witness on the issue, SA Hart, had no personal knowledge of the charged grand jury. Moreover, Riley was not indicted by the grand jury investigating the January 6 breach of the U.S. Capitol (as SA Hart falsely claimed), which was empaneled on January 8, 2021; rather, he was indicted by a separate grand jury, empaneled on August 11, 2021. A16.

Because the Government's amendment to the Indictment was prejudicial, Riley is entitled to a new trial.

## IV. The District Court Abandoned Its Judicial Independence.

The Government contends that "[b]ecause Riley 'did not request recusal below,' he 'has therefore waived his right to do so here.'" Gov't Br. at 57 (citing *United States v. Barrett*, 111 F.3d 947, 952 (D.C. Cir. 1997)). But, the Government's argument relies upon precedent relating to claims for recusal made pursuant to 28 U.S.C. § 455(a). Here, Riley is not asserting that the district court should have recused itself under 28 U.S.C. § 455(a). Instead, Riley's claim is that the court "displayed such bias that [he] did not receive a fair trial," which is a separate inquiry,

although "the same general principles apply." *See United States v. Carson*, 455 F.3d 336, 355 n.17 (D.C. Cir. 2006).

Moreover, should this Court determine that precedent regarding the timeliness of claims under § 455(a) applies here, Riley's claim is still timely. This Court has recognized that "section 455(a) contains no express timeliness provision." *Barrett*, 111 F.3d at 951. As a result, "most circuits considering the matter have concluded that a litigant must raise the disqualification issue within a reasonable time after the grounds for it are known." *Id.* In this case, Riley did not know the full grounds for his claim until after the district court issued its oral ruling on his motion for judgment of acquittal.[10]

---

[10] The Government also contends (at 57) that Riley's claim "is unpreserved and subject to plain-error review," and, in support, cites to *Barrett*. In that opinion, however, the concurring judge emphasized his disagreement "with the court's further, and apparently unnecessary, statement that '[the appellant] did not request recusal below and has therefore waived his right to do so here.'" *Barrett*, 111 F.3d at 955 (Tatel, J., concurring). Judge Tatel then opined:

> Although I agree that timeliness is a factor to be considered, the obligation section 455(a) places on judges means that even an untimely recusal claim cannot deprive a circuit court of its responsibility to review a judge's failure to recuse.

Regarding the merits of Riley's claim, the Government attempts to justify each of the district court's actions separately, disregarding the cumulative impact of the district court's biased conduct. *Cf. United States v. Donato*, 99 F.3d 426, 437 (D.C. Cir. 1996) (noting that "the frequency, intensity, and one-sidedness of the court's hostility raise a serious question as to whether the trial court evidenced sufficient bias that the defendant was unable to receive a fair trial."). Importantly, negative comments directed by a trial judge to a defendant or his counsel will warrant reversal 'if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" *Id.* at 435.

The Government also contends that Riley's "citations . . . to the range of evidence he presented at trial" serve to "undermine[]" his claim that the district court limited his ability to present a defense. Gov't Br. at 58. Again, the Government ignores the totality of the district court's decisions precluding Riley from presenting evidence, the cumulative effect of which considerably limited Riley's ability to mount a defense.

Notably, the district court granted a motion *in limine*, in advance

---

*Id.* In this case, to ensure the "integrity and public reputation of the federal judiciary," *id.*, the Court should review Riley's claim that the district court abandoned its judicial independence.

of trial, precluding Riley from: (i) challenging the Government's investigation (A78-79, 164-65, 240-42, 596-600, 1144-45); (ii) presenting any evidence that Hiles' Facebook post was generally available, including through the Government's issuance of preservation requests to Facebook, and thus could not have been removed from the purview of the grand jury (A5, 24-26, 35-36, 59); (iii) offering evidence regarding Riley's experience that protestors at the U.S. Capitol were not prosecuted for felonies or subject to grand jury indictments (A159-70); and (iv) presenting evidence of Riley's actions following January 6, 2021 through his arrest (A61-62, 166-79). Additionally, the district court limited the defense from calling Hiles, after taking the unorthodox step of requiring a proffer from Riley's counsel of Hiles' anticipated testimony (A8, 1144-45). The court also required a proffer regarding defense witness SA Charles Nielsen (who the Government opposed being called as a witness), who received the screenshot of Hiles' Facebook post at the FBI, as discussed *supra* at 22-23, n.9. A621-33, 853-78. The district court required this in the presence of the Government's chief witness, SA Hart, who was present at counsel's table over appellant's objection for all court conferences and during jury selection.

Moreover, a neutral and detached judge would not, among other improper acts: (i) predetermine the evidence by making a finding almost a year before trial that Riley "encouraged" Hiles to destroy evidence, while also labeling Riley's defense as entirely "legal" (A419, 1159); (ii) brush aside the nexus requirement between a particular grand jury and the obstructive conduct in denying Riley's motion for acquittal (A1065, 74); (iii) take judicial notice of disputed facts based on documents not provided to Riley in discovery, after denying Riley's motion requesting their production (A704, 710-11, 715-738); (iv) recommend that the Government improve its litigation strategy by arguing a different foreseeable grand jury was obstructed (A768-70); (v) instruct the Government how to cross-examine Riley's character witnesses over defense counsel's objection (A890-91); and (vi) chastise Riley's counsel at every procedural stage of the case. *See*, *e.g.*, A157-59, 169, 174, 182-83, 195, 415, 716-17.

Even after the Government improperly had the matter specially assigned to the presiding judge (A1147), Riley should not have had to make the *Hobson*'s choice of asking for a mistrial for lack of judicial independence when the case should have been dismissed pretrial or at

the end of the Government's case because the Government lacked evidence to establish the official proceeding at issue, and neither the Court nor the Government was sure what the Government was arguing. What the Government describes as a "hard-fought trial" (Br. at 61, n.14), Riley describes as a substantively unfair criminal proceeding.

## CONCLUSION

For the reasons stated above, this Court should vacate Riley's conviction.

Respectfully submitted,

**SILVERMAN | THOMPSON | SLUTKIN | WHITE LLC**

 */s/ Christopher Macchiaroli*
Christopher Macchiaroli
(D.C. Bar No. 491825)
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
cmacchiaroli@silvermanthompson.com

Emma J. Mulford (Bar No. MD0146)
400 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 385-6249
Facsimile: (410) 547-2432
Email: emulford@silvermanthompson.com

*Counsel for Appellant Michael Angelo Riley*

# CERTIFICATE OF COMPLIANCE

1.     This reply brief complies with the type-volume requirements of Federal Rule of Appellate Procedure 32(a)(7) because the reply brief contains 6,471 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and other applicable Rules; and

2.     This reply brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because this reply brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook font.

Dated: January 3, 2024

*/s/ Christopher Macchiaroli*
Christopher Macchiaroli

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2024, I caused a copy of the foregoing Reply Brief for Appellant to be served by electronic means, through the Court's CM/ECF system, upon counsel for Appellee, Mark Hobel.

*/s/ Christopher Macchiaroli*
Christopher Macchiaroli